BEARD v. HILL.

1. Bills and Notes—Fraud—Evidence.

Where, in an action on a promissory note, the defense was that its execution was procured by a trick, evidence that the person who procured its execution had obtained other notes in the same locality by trickery was admissible.

2. Same—Agency to Sign—Husband and Wife—Instructions.

Where the defense to an action on a note was that it was obtained by trickery, and it appeared that it was executed by defendant's wife for defendant, who could neither read nor write, it was error to give instructions excluding the defense that the wife was deceived into signing the note, supposing it to be some other document, and leaving with the jury the impression that, whether or not the authority given by defendant to his wife included the signing of the note, it was sufficient if she had general authority to sign his name to papers on that occasion.

3. Same—Bona Fide Holders.

A promissory note the signature to which was procured by trickery or substitution, or was affixed by another without authority, is void, even in the hands of a *bona fide* holder.

Error to Shiawassee; Smith, J. Submitted April 25, 1902. (Docket No. 88.) Decided June 24, 1902.

*Assumpsit* by Abraham L. Beard against Henry Hill upon a promissory note. From a judgment for plaintiff, defendant brings error. Reversed.

*Martin V. B. Wixom* (*Selden S. Miner*, of counsel), for appellant.

*Albert L. Chandler*, for appellee.

Montgomery, J. This action is brought upon a promissory note purporting to be executed by Henry Hill and Mary A. Hill, and payable to the order of Charles A. Fletcher, president of the Kalamazoo Medical & Surgical

Sanitarium, of Kalamazoo, Mich. The defendant filed a plea of the general issue, and an affidavit denying that the note was signed by him, or by any person authorized by him to sign it; and accompanying the plea of the general issue was a notice that he would give in evidence that, if the signature was obtained from any person authorized by him to sign his name, it was secured by a trick.

The evidence tends to show that Fletcher is a traveling physician, and that he had in his employ an advance agent named Cook; that, at the time this note purports to bear date, Dr. Fletcher and Cook were at the home of the Hills. The defendant offered testimony tending to show that papers were prepared by Dr. Fletcher, called "Guaranty Bond and Memorandum of Agreement," which were executed in duplicate. There were two of these agreements; one relating to the treatment of Mr. Hill, and one relating to the treatment of his wife. Mary A. Hill testified that she never knowingly signed the note in question; that she did sign these other papers, and was authorized to do so by her husband. The defendant, Henry Hill, testified that he never saw the note in question, to know it; that he himself was unable to read or write; that he authorized his wife to sign his name to the guaranty bonds, so called, but did not authorize her to sign his name to the note in question, or any other promissory note.

On the trial the defendant offered to show other instances in which this same Dr. Fletcher had secured promissory notes by trickery from people in the neighborhood. This testimony was at first excluded, but was afterwards received, upon the suggestion of plaintiff's counsel that, while it was incompetent, it was better to put it in and be safe, and with comments from the court which would indicate to the jury that the testimony was let in as a matter of grace. The testimony offered was competent, within the rulings of this court in *Beebe* v. *Knapp*, 28 Mich., at page 65; *Stubly* v. *Beachboard*, 68 Mich., at page 422 (36 N. W. 192); and *French* v. *Ryan*, 104 Mich. 625 (62 N. W. 1016). It is very doubtful whether the subsequent

admission of this testimony, accompanied, as it was, by the comment made, would cure the error.

But a more fatal error appears in the trial.` The defendant preferred the following requests:

''If the jury in this case find that the defendant never designed to put or cause to be put in circulation the note in question, and that he never bargained to do so, and that he has never consciously been privy to any attempt to set such paper afloat, and that the note was made and executed without any knowledge of the same upon his part, then the plaintiff cannot recover, and your verdict must be for the defendant.''

''In this case, if the jury find that the promissory note in question was obtained by trickery, without negligence upon the part of the defendant, and that the defendant did not intend to give such promissory note, the note would not be good, even in the hands of a *bona fide* holder, and your verdict must be for the defendant.''

''If, in this case, you find that the defendant never signed the note in question, and never authorized any one to sign it for him, and did not intend to sign the note, but supposed that he or his agent was signing some other paper, and there was no carelessness upon his part, then the plaintiff cannot recover, and your verdict must be for the defendant.''

The circuit judge declined to give these requests, and charged the jury:

''Therefore I instruct you that if you find, from a preponderance of the evidence, that, as a matter of fact, Mary Hill, in pursuance of the instructions of, or with or by the consent of, Henry Hill, wrote the name 'Henry Hill,' now appearing upon this paper, Exhibit A, which has been put in evidence, then and in such case your verdict will be for the plaintiff, and you will assess the damages as I have instructed you.''

And in response to a direct question by a juryman as to whether, if they should find that there was some trick,— that is, that the doctor performed some trick to get this note signed,—they were bound to find for the plaintiff, the court repeated the instructions above quoted, and added:

"There is no evidence here of any trick. Jurors can't go into suspicions, and run off into the field of speculation. You must decide this case by the evidence. Unless there is something in the evidence— I will withdraw the statement that there is no evidence of any trick; but they are to be governed by the evidence; they are to determine whether there is any evidence as to said matter."

And again, after the jury had retired from the courtroom, they were recalled, and the court repeated the instruction, as follows:

"I recalled you, as I feared, perhaps, I might not have made myself sufficiently plain in the answer I made to the question propounded by the juror as to the question of trick, and I read the instructions that I gave you,—that if you find, as a matter of fact, and by a preponderance of the evidence, that Mary Hill, in pursuance of the instructions of, or with or by the consent of, Henry Hill, wrote the name ' Henry Hill,' now appearing upon this paper, Exhibit A, which has been put in evidence, then, in such case, your verdict will be for the plaintiff. You will bear in mind this part of it,—that if, as a matter of fact, Mary Hill, in pursuance of the instructions of, or with or by the consent of, Henry Hill, wrote that name. Now, that is as plain as I can make that; but you must determine that from the evidence,—whether it was done by Mary Hill in pursuance of the instructions of, or by the consent of, Henry Hill. You must determine that from the evidence. You shouldn't go into the field of guesswork and speculation and rumor and suspicion to determine that question, whether it was by his consent or direction, from the evidence in the case. I think that is as plain as I can make it."

It is evident that the purpose was, by this instruction, to exclude any such defense as that the witness Mary Hill was deceived into signing this note, supposing it to be some other document, and to leave the impression with the jury that, whether the authority from Hill to his wife to sign some papers included the note in question or not, it was sufficient if she had general authority to sign his name to papers on that occasion. We think this view of the case was clearly erroneous. The defendant himself was unable to read. According to his theory of the case, he

gave a special authority to his wife to sign his name to certain documents. Her testimony tends to show that she did not suppose she was exceeding the authority. By what means the signature was obtained to this note is not quite clear, but, if it was obtained by trickery or by substitution, it comes clearly within our former decisions. *Gibbs* v. *Linabury*, 22 Mich. 479 (7 Am. Rep. 675); *First Nat. Bank of Sturgis* v. *Deal*, 55 Mich. 592 (22 N. W. 53). Furthermore, as the note was not signed by the defendant in person, it is essential that one affixing the signature should have authority. The testimony on the part of the defendant tended to show that no such authority existed. It is true that this question was left to the jury by the circuit judge, but under instructions which implied that, even if the apparent consent to affixing the signature to a paper was secured by fraud or trickery, it would be equally binding upon the defendant.

The judgment will be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.