## HYMAN *v.* KIRT.

1. Bills and Notes—Action—Evidence—Forgery—Other Forgeries—Admissibility.

    In an action on a promissory note, the defendant having denied the execution of the note, testimony tending to show that plaintiff left for collection another note purporting to be signed by another party, and on being confronted with the supposed maker, made contradictory statements, from which the jury might infer that the note was a forgery, is admissible on the question of intent.

2. Same—Result of Similar Action.

    Where the defendant has denied the execution of the note sued upon, inquiry into the result of an action by the same plain-

    153 Mich.—8.

tiff upon another note, in which the defense was that the note had been paid, raises a collateral issue which plaintiff cannot be expected to be prepared to meet, and is incompetent.

3. TRIAL—RECEPTION OF EVIDENCE—CURE OF ERROR.
   An instruction in which the court states his recollection that certain incompetent testimony was not received, and that counsel was in error in referring to it, and that the jury will not take it into consideration, does not cure the error in receiving the testimony.

4. SAME—ARGUMENT OF COUNSEL—PREJUDICIAL STATEMENTS.
   Reference by counsel to a party in argument as a "Jew horse dealer" is reprehensible, and in a proper case may cause reversal.

Error to Leelanau; Mayne, J. Submitted April 17, 1908. (Docket No. 113.) Decided May 27, 1908.

Assumpsit by Herman Hyman against Joseph Kirt on a promissory note. There was judgment for defendant, and plaintiff brings error. Reversed.

*Pratt & Davis*, for appellant.

*John W. Patchin* and *C. L. Dayton*, for appellee.

MONTGOMERY, J. The plaintiff brought an action to recover on a promissory note of $2,140. The defendant, on oath, denied the execution of the note, and this presented the issue which was tried before the jury. It was conceded by the plaintiff that the note included a considerable sum of usury. It was claimed that the amount of money actually advanced to the defendant was $1,850, and for this sum the plaintiff claimed judgment. Plaintiff's testimony tended to show the execution of the note by the defendant as a culmination of dealings extending over a considerable period. The defendant, on the other hand, denied that he had ever signed the note in question knowingly, although admitting that the signature looked like his, his theory being that he had been asked by plaintiff to witness a chattel mortgage, and that the note had been substituted in place where his signature was to appear

upon the mortgage and the signature to the note thus obtained.

The errors assigned relate to the admission of testimony and to the remarks of counsel in the argument to the jury.

On the trial, the defendant sought to show that a like claim on a note had been made by plaintiff during the time the present note was extant against one John Gilness, and that plaintiff had deposited a note of that description with the bank at Traverse City, who had in turn notified one Jonas Gilness, who was the only person of that name residing in the neighborhood where the note purported to have been made, and who was often called John Gilness, and that upon Jonas Gilness confronting the plaintiff, he made contradictory statements, from which the jury might have inferred that the note was a forgery. We think testimony of this character was admissible as bearing upon the question of intent. *Beebe* v. *Knapp*, 28 Mich. 53; *French* v. *Ryan*, 104 Mich. 625; *Cook* v. *Perry*, 43 Mich. 623; *Beard* v. *Hill*, 131 Mich. 246, which is a case very similar in its facts.

On the cross-examination of plaintiff, he was asked if he had had trouble of this same nature before in court. This was admitted, subject to objection and exception, and the plaintiff thereupon testified that he had a suit on a note but not a suit where the people had denied the execution of the papers, but one in which the defendants had claimed that the note had been paid, and defendant's counsel showed in this suit that the jury found that the notes had in fact been paid, and plaintiff had been defeated on that ground. In the argument to the jury this testimony was referred to, and it was stated that plaintiff "admits that he sued an old man and his wife on notes for $2,500, notes that the jury found in that very case had been paid." It will be noted that this testimony had no bearing on the question of the guilty knowledge of the plaintiff or of the intent in securing the signature, its only bearing being that it might tend to show, if the record of that case was competent testimony to show it, that the plaintiff had been discredited by a jury on an-

other trial. This was not competent testimony. It introduced a collateral issue which the plaintiff could not have been expected to be prepared to meet. Before the jury could properly determine that the result in that case should weigh against the credibility of the plaintiff, it would have been necessary to try out the issue presented before the jury in that case. See *Brennan* v. *Busch*, 67 Mich. 670.

The circuit judge in his charge used the following language:

" Reference was also made to a former suit in which it is alleged the plaintiff lost because the other parties came in and testified that payment of the note was made. My recollection of that matter is that I sustained the objection made by the plaintiff to the testimony and it was not admitted. But counsel, in the heat of the argument, probably forgot the ruling of the court in that matter when they referred to the same in the argument. So, gentlemen, you will not take that into consideration at all."

It is evident that he was mistaken as to the fact of the testimony having been admitted, and the question remains as to whether this language of the court cured the error in receiving the testimony. We are not able to say that it would have this effect. The testimony had been received, it had been dwelt upon by counsel in his argument to the jury, and we cannot feel assured that it had not had its effect. See *Maxted* v. *Fowler*, 94 Mich. 112.

The reference by counsel to plaintiff as a Jew horse dealer was, to say the least, most unfortunate, and it is difficult to conceive how counsel should be betrayed by his zeal into using such language, in view of the decision in this court in *Cluett* v. *Rosenthal*, 100 Mich. 193. We need not determine whether the withdrawal of this expression and the instruction of the court cured the error, as, for the error in admission of testimony relating to the other litigation, the case must be reversed and a new trial ordered.

GRANT, C. J., and BLAIR, CARPENTER, and McALVAY, JJ., concurred.