(November 11, 1911.)

# HOWARD C. PARK, Appellant, v. J. T. JOHNSON et·al., Respondents.

[119 Pac. 52.]

NEGOTIABLE INSTRUMENT — EXAMINATION OF PLAINTIFF — BURDEN OF PROOF—SUSPICIOUS CIRCUMSTANCES.

(Syllabus by the court.)

1. The case of *Winter v. Nobs,* 19 Ida. 18, 112 Pac. 525, approved and followed.

2. Evidence in this case examined and *held* sufficient to support the judgment.

3. In an action upon a promissory note where the plaintiff testifies in chief and in support of his complaint that he purchased the note before maturity and paid therefor a consideration, and that the plaintiff was well acquainted with the payee of the note and had been for many years, and that the note purchased was one of a number of the same kind, it is proper on cross-examination to interrogate the plaintiff fully as to all facts connected with the transaction involved in the purchase of said note in order to aid the jury in determining whether the note was in fact purchased in good faith before maturity and for value.

4. Where action is brought upon a promissory note, and it is alleged that the plaintiff purchased the note before maturity in due course of business and paid therefor a consideration, and an answer is made denying the transfer before maturity, or at all, for value or otherwise, and that the note was fraudulent from its inception, the jury may take into consideration all the circumstances surrounding the transaction in determining whether the purchase was made in good faith, and whether such circumstances were sufficient to give notice to the plaintiff or to lead an ordinarily prudent man to make inquiry as to whether the note possessed any infirmities which would affect its collection, and if the jury conclude that the circumstances surrounding the purchase of the note were sufficient to cause an ordinarily prudent man to make inquiry or investigate the circumstances under which the note was executed and the plaintiff refrained from making such inquiry, then and in such case such facts were sufficient to authorize a jury to find that such holder was not a holder in good faith and without notice.

5. An instruction which covers the provisions of sec. 3509, Rev. Codes, and adds thereto, "And the court instructs the jury that if

you find from the evidence in this action that the title of McLaughlin Bros. in controversy was defective by reason of fraud, illegal consideration or for any reason, then it becomes incumbent upon the plaintiff to show that he was a holder in due course, and in order for him to do so he must prove sufficient to show that he is a holder within the meaning of the definition above given," is erroneous by reason of including the words, "or for any reason."

6. An instruction which directs the jury that the presence of suspicious circumstances means bad faith is erroneous. The existence of suspicious circumstances alone will not destroy the good faith of a transaction, but it is such circumstances as would charge the purchaser of a note, as an ordinarily prudent man, with bad faith or notice of the infirmity in the instrument, or defect in the title of the person from whom he makes the purchase. This error, however, taken in connection with other instructions covering the same subject and the strong and conclusive evidence, was not of such prejudicial character as to warrant a reversal.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. Robert N. Dunn, Judge.

Action upon a promissory note. Judgment for defendants. Plaintiff appeals. *Affirmed.*

Elder & Elder, and Reed & Boughton, for Appellant.

"Constructive notice from extrinsic circumstances must be clear, and it must appear that the indorsee was apprised of such circumstances as would have avoided the note in the hands of the indorser." (1 Daniels, Neg. Inst., p. 799; *Horton v. Bayne,* 52 Mo. 533; *Wildsmith v. Tracey,* 80 Ala. 262; *Lee v. Whitney,* 149 Mass. 447, 21 N. E. 948; *Goetz v. Bank of Kansas City,* 119 U. S. 551, 7 Sup. Ct. 318, 30 L. ed. 515.)

It is only actual knowledge of the defect or infirmity or notice of such facts and circumstances as would put a man on inquiry and would charge him with bad faith or the imputation of dishonest dealings that was intended by the statute to defeat a recovery. (*Wright Investment Co. v. Fillingham,* 85 Mo. App. 534; *Goodrich v. McDonald,* 77 Mich. 486, 43 N. W. 1019; Norton, Bills and Notes, p. 303.)

Unless the evidence makes out a case upon which the jury would be authorized to find fraud or bad faith in the purchaser, it is the duty of the court to direct a verdict for the holder. (*Armstrong v. Stearns,* 156 Mich. 597, 121 N. W. 312; *Bothwell v. Corum* (Ky.), 123 S. W. 291.)

Mere information tending to arouse suspicion is not sufficient. (*Brown v. Hoffelmeyer,* 74 Mo. App. 385; *Merchants & Mfgrs. Nat. Bank v. Furniture Co.,* 57 W. Va. 625, 50 S. E. 880, 70 L. R. A. 312; *Leavitt v. Taylor,* 163 Mo. 158, 63 S. W. 385; *Valley Sav. Bank v. Mercer,* 97 Md. 458, 55 Atl. 435; *Mass. Nat. Bank v. Snow,* 187 Mass. 159, 72 N. E. 959; *Miller v. Finley,* 26 Mich. 249, 12 Am. Rep. 306.)

A purchaser of negotiable paper, though he may have had cause for suspicions sufficient to put a prudent man on inquiry or be negligent, will, in the absence of a showing of bad faith, acquire good title. (*Wilson v. Riddler,* 92 Mo. App. 335; *First State Bank v. Hammond,* 104 Mo. App. 453, 79 S. W. 493; *Creston Nat. Bank v. Salmon,* 117 Mo. App. 506, 93 S. W. 288; *Second Nat. Bank v. Weston,* 161 N. Y. 520, 76 Am. St. 283, 55 N. E. 1080; *First Nat. Bank v. Flath,* 10 N. D. 281, 86 N. W. 867; *Merritt v. Boyden,* 191 Ill. 136, 85 Am. St. 246, 60 N. E. 907; *Goetz v. Bank of Kansas City,* 119 U. S. 551, 7 Sup. Ct. 318, 30 L. ed. 515; *Doe v. N. W. Coal Trans. Co.,* 78 Fed. 62; *Sinkler v. Siljan,* 136 Cal. 356, 68 Pac. 1024; *Metcalf v. Draper,* 98 Ill. App. 399; *Mann v. Merchants' Loan & Trust Co.,* 100 Ill. App. 224.)

Whitla & Nelson, for Respondents.

Wilful refusal or neglect to learn of a state of facts which are readily at command, for the purpose of attempting to claim *bona fides,* as is shown in this case to be the fact, is just as conclusive evidence of "bad faith" as absolute knowledge would have been. (*Schmueckle v. Waters,* 125 Ind. 265, 25 N. E. 281; *State Nat. Bank v. Bennett,* 8 Ind. App. 679, 36 N. E. 551; 2 Ency. of Ev. 526.)

McLaughlin Brothers' reputation has become so widely known by every person acquainted with them, or who knows of their transactions, that anyone who takes their paper is

charged with notice of their fraudulent transactions, as a number of courts of last resort have held that their dealings were fraudulent. (*City Nat. Bank v. Jordan,* 139 Iowa, 499, 117 N. W. 758; *Union Nat. Bank v. Windsor,* 101 Minn. 470, 118 Am. St. 641, 112 N. W. 999, 11 Ann. Cas. 204; *Union Investment Co. v. Wells,* 39 Can. Sup. Ct. 625, 11 Ann. Cas. 33; *Winter v. Nobs,* 19 Ida. 18, 112 Pac. 525.)

"The term 'good faith' means not only honesty of intention, but the absence of suspicious circumstances, or, if such circumstances exist, then such inquiry as will satisfy a prudent man of the validity of the transaction." (*Pennington County Bank v. First State Bank,* 110 Minn. 263, 136 Am. St. 496, 125 N. W. 119, 26 L. R. A., N. S., 849; *Ward v. Doane,* 77 Mich. 328, 43 N. W. 980; *City Nat. Bank v. Jordan,* 139 Iowa, 499, 117 N. W. 758; *Union Nat. Bank v. Windsor,* 101 Minn. 470, 118 Am. St. 641, 112 N. W. 999, 11 Ann. Cas. 204; *Arnd v. Aylesworth,* 145 Iowa, 185, 123 N. W. 1000.)

"Whatever the circumstances may have been, the question of good faith of the purchaser of the note was one of fact instead of law, and the jury had a right to determine it in the light of all the facts and circumstances presented in the case." (*Winter v. Nobs,* 19 Ida. 18, 112 Pac. 525; *Merchants' Nat. Bank v. Sullivan,* 63 Minn. 468, 65 N. W. 924; *Schultheis v. Sellers,* 223 Pa. 513, 72 Atl. 887, 22 L. R. A., N. S., 1210; *Cedar Rapids Nat. Bank v. Myhre Bros.,* 57 Wash. 596, 107 Pac. 518; *McKnight v. Parsons,* 136 Iowa, 390, 125 Am. St. 265, 113 N. W. 858, 22 L. R. A., N. S., 718, 15 Ann. Cas. 665; *Tredick v. Waters,* 81 Kan. 828, 106 Pac. 1067.)

STEWART, C. J.—This is an action to recover upon a promissory note for $1,125, dated Coeur d'Alene, Idaho, March 26, 1906, and due three years from date, and executed jointly and severally by respondents to McLaughlin Bros. and by McLaughlin Bros. indorsed and transferred before maturity for value received, to the plaintiff, appellant herein, who claims to be the owner of the same. The answer admits the execution of the note sued on and puts in issue the plaintiff's ownership of said note and the transfer to plaintiff by

McLaughlin Bros, before its maturity, and alleges that the note was originally obtained through fraud and deception at the time the note was executed, and that there was a breach of a warranty. The cause was tried to a jury and a verdict rendered for the respondents. Judgment was entered accordingly. This appeal is from the judgment and also from the order overruling a motion for a new trial.

The appellant assigns fifty-two errors, many of which have been discussed and passed on by this court in the case of *Winter v. Nobs et al.*, 19 Ida. 18, 112 Pac. 525, a case almost identical with the one now under consideration. In fact, the Winter-Nobs case was upon one of four promissory notes given by the respondents to McLaughlin Bros. in the same transaction in which the note sued upon in this action was given, and the only material difference between the facts of the two cases is that in the Winter case McLaughlin Bros. indorsed and transferred the note to Winter, and in the present case McLaughlin Bros. indorsed and transferred the note to the appellant Park. The evidence in the present case is even stronger and more convincing than the evidence in the Winter case, but is of the same general nature and kind and proves the same state of facts; and in the opinion above referred to this court held that the evidence was sufficient to justify the verdict. With that decision we are still in full accord, and apply the rule there laid down to the present case.

It is contended upon this appeal, however, that the trial court erred in permitting certain questions to be propounded to the appellant on cross-examination. The evidence of plaintiff was taken by deposition. The appellant was asked many questions with reference to his acquaintance with McLaughlin Bros, and the transaction he had with them at the time the note was purchased, and whether he had bought other notes from McLaughlin Bros. previous to the purchase of the note in controversy in this case, and whether payment of the notes so purchased was refused and suit brought, and the defendants made the same answer made in the present case. These questions were all objected to upon the ground that they were

incompetent, irrelevant, immaterial and improper cross-examination. The questions were certainly material and relevant upon the issue of fraud and misrepresentation tendered by the answer. They were proper questions for cross-examination, for the reason that the plaintiff testified on direct examination that he had known the firm of McLaughlin Bros. for probably fifteen years and purchased eleven notes from McLaughlin Bros. through John R. McLaughlin on the 5th day of February, 1909, of which the note sued on in this action was one; that he paid for the note in controversy the sum of $1,300.96 by check; that he presented said note for payment and payment was refused. The deposition of the plaintiff was offered as evidence in chief and as part of his proof in making his case and opened the door for a cross-examination of the plaintiff upon all matters stated in his direct examination with reference to the purchase and time of purchase and consideration paid for said note. Sec. 6079 of the Rev. Codes says: "The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith." The plaintiff having testified to his purchase of the note, the time he made such purchase, his acquaintance with McLaughlin Bros., from whom he made the purchase, and the amount he paid therefor, and that he was the owner of such note, gave the right to cross-examine him as to all matters of fact in relation to such purchase, and it was permissible on such cross-examination to inquire as to his relationship with McLaughlin Bros., the duration and character of it, and the other transactions of the same kind and character as the one involved in this case, and whether he had purchased other notes from McLaughlin Bros. executed in payment of the purchase of other property of the same kind and whether he was compelled to bring suit for the collection of the same, and were the same defenses made as in the present case. The questions propounded on cross-examination all tended to show the circumstances surrounding the transaction between himself and McLaughlin Bros. in purchasing said note, and relate to facts which went to the question of the good faith of the plaintiff in purchasing the note

sued upon.    It was disclosed by this evidence that the plaintiff and McLaughlin Bros. were residents of the city of Columbus in the state of Ohio, and that they had been acquainted for the past fifteen years, and that plaintiff had had numerous transactions with McLaughlin Bros. in purchasing other notes issued for the sale of other stallions, and that McLaughlin Bros. was a solvent and responsible concern, and notwithstanding these facts, the plaintiff did not pursue his right to collect the note purchased from the indorser, McLaughlin Bros., whose solvency he knew, but he came to the state of Idaho and brought this action for the purpose of recovering the amount due on the note from the defendants, when he had no knowledge whatever that any of the defendants were solvent or that he would in the end be able to collect anything from the defendants.    These facts were circumstances which the jury and the court might consider and from them determine whether they were sufficient to give notice to the plaintiff or to put him on his inquiry, that the note possessed any infirmities which would in any way affect its collection.    If the circumstances surrounding the purchase of the note were sufficient to give to an ordinarily prudent man notice and the plaintiff refrained from making inquiry with reference to the transaction out of which the note originated, he is not in the position of a holder in good faith without notice.    The questions propounded upon cross-examination and permitted by the trial court all related to the transaction surrounding the purchase of the note by the plaintiff from McLaughlin Bros., and the facts shown all tended to prove that the plaintiff did not purchase the note in question in good faith or in due course of business before maturity.

Sec. 3509 of the Rev. Codes provides:

"A holder in due course is a holder who has taken the instrument under the following conditions: First, that the instrument is complete and regular upon its face; second, that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; third, that he took it in good faith and for value; fourth, that at the time it was negotiated to him he

had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

So the inquiries made of the plaintiff with reference to his acquaintance with McLaughlin Bros., and the many transactions he had had with such firm in handling other notes made payable to McLaughlin Bros. and given for other stallions sold by McLaughlin Bros., and the knowledge the plaintiff had of McLaughlin Bros., business, and that they had had litigation upon notes purchased by him from them in which breach of warranty and fraud in the inception of the notes was made a defense, and the same was sustained by the highest courts of other states upon the same state of facts as involved in this case; and the fact that the plaintiff pursued the defendants in the state of Idaho and took no steps to hold the indorsers upon the note,—were circumstances and facts which tended to show that he did not take the note in good faith or for value, and that at the time it was negotiated he had notice of infirmities in the note and the defect of the title of McLaughlin Bros., and with such facts before him, made no inquiries as to the truth of the same.   He places himself in the position where he cannot claim as a holder in good faith without notice.   (*Schmueckle v. Waters et al.,* 125 Ind. 265, 25 N. E. 281; *State Nat. Bank v. Bennett,* 8 Ind. App. 679, 36 N. E. 551; 2 Ency. of Ev. 526; *Winter v. Nobs,* 19 Ida. 18, 112 Pac. 525.)

The court gave to the jury an instruction defining a holder in due course and in addition to the provision found in sec. 3509, added to subd. 4 the following: "And the court instructs the jury that if you find from the evidence in this action that the title of McLaughlin Bros. to the note in controversy was defective by reason of fraud, illegal consideration, or for any reason, then it becomes incumbent upon the plaintiff to prove that he was a holder in due course, and in order for him to do so he must prove sufficient to show that he is a holder within the meaning of the definition above given."   This addition to the statutory definition was intended and in fact states the rule with reference to the burden of proof shifting to the plaintiff from the defendant, where

it is shown that the note in its inception was fraudulent and illegal, in which case the burden of proof shifted from the defendant to the plaintiff and the plaintiff was required to prove that he was a holder in due course within the meaning of the statute. This instruction should not have included the words "or for any reason," as such words are of such an uncertain import that there is a possibility the jury might consider some matter not properly included within the evidence, but the mere use of such words in the instruction we do not think destroys or lessens the effect of the direction of the court as to the burden of proof, where, as in the case under consideration, the note sued upon was obtained by fraud and misrepresentation, and that the use of such words could in no way prejudice the rights of the defendant.

Serious complaint is made against instruction No. 11. This instruction reads as follows:

"The court instructs the jury that the term 'good faith' means not only honesty of intention, but the absence of suspicious circumstances, or, if such circumstances exist, then such inquiry as will satisfy a prudent man of the validity of the transaction, and the court instructs the jury that if there were such circumstances surrounding the alleged purchase of the note in controversy by the plaintiff, as would put an ordinarily prudent man upon inquiry and lead him to believe that there was or might be a defect in the title of the person negotiating the note, or a good defense to the note by the maker in the hands of the person negotiating the same, and the purchaser, under such suspicious circumstances, makes no attempt to ascertain the truth, he cannot claim 'good faith' in accepting the instrument."

This instruction is clearly erroneous in that the court instructs the jury that the term "good faith" means the "absence of suspicious circumstances." The existence of suspicious circumstances will not destroy the good faith of a transaction, but it is such circumstances as would charge the purchaser of a note, as an ordinarily prudent man, with bad faith, or notice of the infirmity in the instrument, or defect in the title of the person from whom he makes the purchase.

The error; however, taken in connection with other instructions covering the same subject and the strong and almost conclusive evidence, was not of such prejudicial character as to warrant a reversal. We think the correct rule of law bearing on this phase of the case has been correctly answered by this court in *Winter v. Nobs, supra,* in which the court said: "It is contended by appellant that mere suspicious circumstances are not sufficient to put a purchaser of a note on inquiry, and that it is necessary in order to defeat his right of recovery to either show actual notice of the fraud or notice of such facts and circumstances as would charge him with actual bad faith in taking the paper without investigating the circumstances under which it was issued." And after quoting the statute, this court says: "We think it is only actual knowledge of the defect or infirmity or notice of such facts and circumstances as would put a man on inquiry, and would charge him with bad faith or the imputation of dishonest dealing that was intended by the statute to defeat a recovery."

We have examined the other instructions given, and we think they state the law as announced by this court in *Winter v. Nobs, supra,* and that there are no grounds for reversing the judgment. The judgment is affirmed; costs awarded to respondent.

Ailshie and Sullivan, JJ., concur.